MAINE CENTRAL RAILROAD COMPANY

*vs.*

BANGOR AND OLD TOWN RAILWAY COMPANY, Appellants,

AND INHABITANTS OF VEAZIE.

Penobscot.   Opinion February 17, 1897.

*Railroads. Crossings. Railroad Commissioners. R. S., c. 18, § 27; Stat. 1836, c. 204; 1853, c. 41; 1858, c. 36; 1883, c. 167; 1885, c. 310; 1889, c. 282; 1893, c. 205, 227; 1895, c. 72.*

Under existing statutes all crossings of highways by railroads, fall within the jurisdiction of the Railroad Commissioners, and when, to effect an overhead crossing for the safety of the public, it becomes necessary to locate a short piece of highway, to connect the crossing with the existing highway, the Railroad Commissioners are alone authorized to make such location, and assess damages for the land taken.

*Held;* that the petition and proceedings, in this case, are according to law, except that the Railroad Commissioners did not estimate damages for the land taken.

ON REPORT.

The case is stated in the opinion.

This matter arose upon the decision of the Railroad Commissioners between the Maine Central Railroad Company and the Bangor, Orono and Old Town Railway Company as to a change in a crossing at grade by both railroads, and over a highway, in the town of Veazie.

The case was submitted to the law court upon a report of the presiding justice as follows:—

It was agreed by the Maine Central R. R. Company, the Bangor, Orono & Old Town Ry. Company and the town of Veazie through their respective counsel that the record in the case number 844 on the docket of this court, (the B. O. & O. Ry. Co. Aplt. v. Maine Central R. R. Co. pending on appeal,) and the report made by the Railroad Commissioners in this case, including the

petition, order of notice and accompanying plan, should make up the report.

The town of Veazie seasonably objected that it had not received legal notice of the pendency of the petition before the Railroad Commissioners. The town of Veazie and the B., O. & O. Ry. Co., seasonably moved for the rejection of the report upon the ground that the Railroad Commissioners had no authority in law under their report, with its accompanying petition and order of notice, to make the order and decree reported by the court.

If the law court should find the petition, proceedings and report to be in accordance with law, then the law court was to take a view of the premises, and finally determine whether or not the public safety, convenience or necessity required that the course of the highway should be changed as prayed for. If it should so determine, the law court was to finally decide all questions of law necessary to a full performance of such decree as the court may judge can and should be made under the petition. All questions of fact relative to the course and expense of the new highway, if ordered, the kind and maximum cost of the bridge and the abutments thereon, the apportionment of expense of building and maintaining the same, and the taxation and allowance of the cost to be finally determined by a single justice without right of exception to his determinations.

(Petition.)

To the Honorable Railroad Commissioners of the State of Maine:

Respectfully represents the Maine Central Railroad Company, a corporation existing under the laws of said state, and possessing and operating a line of railroad from Portland to Vanceboro, passing through the town of Veazie in the County of Penobscot, that its railroad is crossed in said town of Veazie by the electric railway of the Bangor, Orono & Old Town Railway Company, the location of the crossing in question being on the hill near the top of which hill is a church, and the crossing being between said church and the watering trough, said crossing being the one of the two crossings of this company's railroad with said electric railway which is nearer to Bangor; that the existing condition,

construction and manner of such crossing are dangerous to the public safety, including travelers upon this company's railroad, on said electric railway, and in the highway along which said electric railway extends.

Whereupon this company prays and applies to your Honorable Board for a change in the existing condition, construction and manner of such crossing, and that your Honorable Board will determine what changes are necessary, and how such crossing shall be constructed and maintained, and how the expense thereof shall be borne.

And said Maine Central Railroad Company further represents that said electric railway is in and constructed along the main highway leading from Bangor to Old Town through said town of Veazie, and that to facilitate said crossing the course of said highway near the place of such crossing should be altered so that this company's railroad may pass under the same, and this company respectfully applies to your Honorable Board to alter the course of such highway so as to facilitate such crossing, and for such purpose to take such land as may be necessary, and to award damages therefor in accordance with the provisions of Sect. 3 of Chap. 282 of the Public Laws of 1889, and to apportion the expense of such alteration as your Honorable Board may determine in accordance with the provisions of law.    And as in duty bound will ever pray.

July 24th, 1895.

Maine Central Railroad Company,<br>by C. F. WOODARD, its Attorney.

(Report of Railroad Commissioners.)

The provisions of c. 282 of the statute of 1889 and c. 72 of the statute of 1895 seem to be embraced in this petition.    Section 3 of c. 282 of the statute of 1889 is as follows:   "Highways and other ways may be raised or lowered for the purpose of permitting a railroad to pass over or under the same, or the course of the same may be altered so as to facilitate such crossing or to permit the railroad to pass at the side thereof, on application to the railroad commissioners and proceeding as provided by § 27 of c. 180, as amended by this act, and for such purpose land may be taken

and damages awarded as provided for laying out highways and other ways."

It is very clear that, under this statute, the highway may be raised for the purpose of permitting the Maine Central Railroad to pass under the same, and the course of said highway may be changed to facilitate such crossing.

The question which naturally arises, however, is how shall parties proceed to have this accomplished. Can any proceeding be had which is not first instituted by the town authorities in laying out or changing said highway? Or can the board of Railroad Commissioners order the change to be made upon petition of the railroad company, as in this case?

The statute authorizes this change to be made by proceeding as provided by Sec. 27, Chap. 180 of the Revised Statutes as amended. That statute reads as follows:—" Town ways and highways may be laid out across, over or under any railroad track, in the same manner as other town ways and highways, except that before such way shall be constructed, the railroad commissioners, on application of the municipal officers of the city or town wherein such way is located, or of the parties owning or operating the railroad, shall upon notice and hearing, determine whether the way shall be permitted to cross such track at grade therewith or not, and the manner and condition of crossing the same, and the expense of building and maintaining so much thereof as is within the limits of such railroad shall be borne by such railroad company, or by the city or town in which such way is located, or shall be apportioned between such company and city or town as may be determined by said railroad commissioners. Said commissioners shall make a report in writing of their decision thereupon to the Supreme Judicial Court at its next succeeding term to be held in the county wherein such crossing is situated, and shall also make a report of such rulings, proofs and proceedings as either party desires, or as they deem necessary for a full understanding of the case.

The presiding justice at such term of court may accept, reject or recommit said report, or send the case to a new commission, or

make such other order or decree as law and justice may require, and to his ruling or order, either party may file exceptions.

The final adjudication in such cases shall be recorded as provided in section thirty of this chapter. Costs may be taxed and allowed to either party at the discretion of the court."

The board of Railroad Commissioners in this state has acted under a petition similar to the one in this case and ordered the change to be made, and this we think is the general understanding of the provisions of this statute.

We do not feel sure that this is the right interpretation of the statute, but we shall pro forma assume jurisdiction of the matter upon this petition.

The Bangor, Orono and Old Town Railway Co. has however located its railroad along this highway and across the track of the Maine Central Railroad Co. under its charter obtained from the Legislature by chapter 116 of the Private and Special Laws of 1891. By chapter 72 of the statute of 1895, § 1, it is provided that " the board of Railroad Commissioners shall have authority to determine the manner and conditions of one railroad of any kind crossing another. Any corporation or party operating such railroad may apply to said board for the change in the then existing condition, construction and manner of any such crossing. Such application shall be in writing giving the location of the crossing and said board shall give a hearing thereon, after they have ordered such notice to be given by the applicant as to time, place and purpose of said hearing as said board shall deem proper. Said board shall determine at such hearing what changes are necessary and how such crossing shall be constructed and maintained. The expense thereof shall be borne as the railroad commissioners may order."

The Bangor, Orono & Oldtown Ry. Company deny the authority of the board of railroad commissioners to order their railroad to cross the track of the Maine Central R. R. Company by any overhead bridge, and deny the authority of the board to apportion any part of the expense of said change upon said latter company.

If we have the authority to change the highway, under chapter

282 of the statute of 1889, § 3, it would seem to follow that we had the right to change also the location of the electric railroad which runs along said highway.

We find that public convenience and necessity, and the public safety, require that the said highway be raised so as to permit the Maine Central Railroad to pass under the same, and that the crossing of said highway be altered to facilitate such crossing. And we find, as a matter of fact, that this change of grade of said highway, and of the crossing of the Bangor, Orono & Old Town Railway with the Maine Central Railroad is necessary on account of the location of the Bangor, Orono & Old Town Railway along said highway.

We therefore determine that the said highway shall be changed as follows: . . . .

We also determine that the existing conditions, construction and manner of crossing of the Bangor, Orono & Old Town Rail way with the Maine Central Railroad shall be changed so that said Bangor, Orono & Old Town Railway shall cross said Maine Central Railroad by the overhead bridge along the said highway when changed as herein specified, and along the said overhead bridge in said highway on the southerly side of said bridge. . .

All of the above work for the change of said highway outside of the limits of the said Maine Central Railroad shall be done by the town of Veazie. And the land described in the aforesaid change of location may be taken for the above named purposes, and damages awarded as provided by law.

The overhead bridge and abutments and such other portion of the said changed highway as is within the limits of the Maine Central Railroad, shall be built by the Maine Central Railroad Company.

In consideration of the advantages which we believe will be derived by the Bangor, Orono and Old Town Railway Company, by the change in the existing condition, construction and manner of crossing of the said Bangor, Orono and Old Town Railway with the Maine Central Railroad, we apportion the expense as follows : And decide that the said Bangor, Orono and Old Town Railway

Company shall bear two-fifths of the whole expense of building the bridge and abutments and that portion of said way within the limits of the said Maine Central Railroad.

*F. A. Wilson and C. F. Woodard,* for Maine Central Railroad Company.

*H. M. Heath and C. L. Andrews, E. C. Ryder,* with them, for Bangor, Orono and Old Town Railway Company.

*P. H. Gillin,* for Veazie.

SITTING : PETERS, C. J., EMERY, FOSTER, WHITEHOUSE, WIS-
WELL, STROUT, JJ.

STROUT, J.   This is a proceeding by petition to the railroad commissioners to effect a change in the highway crossing of the Maine Central Railroad at grade to an overhead crossing, including a like change in the crossing of the Maine Central at the same point by the Bangor, Orono and Old Town Railway, an electric road running along that highway.   The Railroad Commissioners made report of their decision to the Supreme Judicial Court, as provided by section 27, of chap. 18, of Revised Statutes, as amended by chap. 310 of the laws of 1885, and by chap. 282 of the laws of 1889.   The commissioners adjudged "that public convenience and necessity, and the public safety, require that the said highway be raised so as to permit the Maine Central Railroad to pass under the same, and that the crossing of said highway be altered to facilitate such crossing.   And we find as matter of fact that this change of grade of said highway, and of the crossing of the Bangor, Orono and Old Town Railway with the Maine Central Railroad is necessary on account of the location of the Bangor, Orono and Old Town Railway along said highway."   To effect this, the railroad commissioners changed the place of crossing to one a short distance from the existing grade crossing, but as nearly contiguous thereto as was practicable on account of the conformation of the ground, and laid out a way for a short distance, which was necessary to afford ingress and egress to and from the old line of the highway, over the elevated crossing; and thereupon deter-

mined "that the existing conditions, construction and manner of crossing of the Bangor, Orono and Old Town Railway with the Maine Central Railroad shall be changed so that the said Bangor, Orono and Old Town Railway shall cross said Maine Central Railroad by the overhead bridge along the said highway, when changed as herein specified."

The case comes up on report, by which, among other things, this court is "to determine whether or not the public safety, convenience or necessity require that the course of the highway should be changed as prayed for."

The court had a view of the premises. The highway on which the electric cars run crosses the Maine Central at an acute angle, its immediate approach from the south being down a short but quite steep declivity, with a very limited view of the Maine Central track. A signal station is there located. The safety of passengers on the Maine Central and on the electric road, depends upon the watchfulness of the signal tender, the locomotive engineer and the motorman, as well as the effective working of the car brakes. If the track of the electric road should be wet or icy on the hill, it might be impossible for the motor-man to arrest the onward movement of his car before reaching the crossing. When such result would be perceived on the Maine Central train, it would be too late to arrest its progress.

The question whether public safety requires a highway to pass over or under a railroad at a crossing, is left by the statute in the first instance, to the judgment of the railroad commissioners, and their decision should not be reversed by this court unless it is manifestly erroneous. Our judgment upon this question, from an observation of the premises, entirely coincides with that of the railroad commissioners.

The objections made to the proceeding and decision of the railroad commissioners by the electric road and the town of Veazie, render it necessary to examine the various statutes creating and giving jurisdiction to that board.

By chap. 36 of the laws of 1858, it was made the duty of the governor to appoint three railroad commissioners. Their authority

under that act, related to the condition of railroads, their rolling stock, rates of speed, time tables, times and terms of connection and junction or crossing, and rates of toll, "to the end that the public safety and convenience in the transportation of passengers and merchandise may be provided for and secured." This act was amended in 1864, but the jurisdiction of the railroad commissioners was not materially enlarged. By chap. 204 of laws of 1836, the authority to raise or lower the grade of a highway to allow a railroad to pass over or under it, and to change the course of a highway to facilitate a railroad crossing, was vested in the county commissioners. By chap. 41 of laws of 1853, "the place, manner and conditions" of crossing a highway by a railroad, was to be determined by the county commissioners. This jurisdiction remained with the county commissioners until the act of 1883, chap. 167, § 2, conferred upon the railroad commissioners the authority to determine "the manner and conditions of crossing." But the right to change the course of the highway to facilitate a railroad crossing, and to locate the necessary piece of new road to accomplish that result, was not taken from the county commissioners and conferred upon the railroad commissioners until 1889, by chap. 282, § 3. The mode of crossing of one railroad by another, when no highway or town way was involved, appears to have been left without statutory regulation until the act of 1895, chap. 72, by which the railroad commissioners were given authority "to determine the manner and conditions of one railroad of any kind crossing another." By chap. 205, of laws of 1893, the railroad commissioners were empowered to require a gate or a flagman at a crossing of a highway by a railroad. Until that act, this authority had rested with the county commissioners. And by chap. 227, laws of 1893, the railroad commissioners were empowered "on the application of any railroad corporation whose road crosses another railroad at the same level," to authorize the applicant "to establish and maintain a system of interlocking or automatic signals" at such crossing.

These various statutes indicate the purpose of the legislature to confer upon the railroad commissioners full jurisdiction as to all

crossings of ways by railroads, and of railroads by railroads, and of all matters connected with or incidental thereto, which are necessary or conducive to the safety of travelers. *In re Railroad Commissioners*, 87 Maine, 254.

These statutes being in pari materia, should be construed together, as if they were one law. "The meaning of the legislature may be extended beyond the precise words used in the law, from the reason or motive upon which the legislature proceeded, from the end in view or the purpose which was designed." *U. S.* v. *Freeman*, 3 How. 556. "Statute provisions, unless absolutely conflicting, are to be construed so as to make them operate harmoniously as a whole, giving each its appropriate effect, not using one section to evade or abrogate another." *Collins* v. *Chase*, 71 Maine, 436. "Statutes are to receive such a construction as must evidently have been intended by the legislature. To ascertain this we may look to the object in view, to the remedy intended to be afforded, and to the mischief intended to be remedied." *Winslow* v. *Kimball*, 25 Maine, 495.

The statute of 1889, amending former acts, applied solely to crossings of ways by railroads, and provided that the expense of building and maintaining so much of the way as was within the limit of the railroad, should be borne by the railroad, or by the city or town in which the way was situated, or apportioned between them as should be determined by the railroad commissioners. After making their decision, the railroad commissioners were required to report their doings, with such rulings, proofs and proceedings as either party desired, or as they deemed necessary for a full understanding of the case, in writing to the Supreme Judicial Court, at its next term, at which term the presiding justice "may accept, reject or recommit said report, or send the case to a new commission, or make such other order or decree as law or justice may require." To his ruling exceptions are allowed. The decision of the commissioners does not become operative, till final decree of the Supreme Judicial Court shall confirm them. Section 3 of this act provides for raising or lowering a way to permit the railroad to pass over or under it, by order and under

the direction of the railroad commissioners; and for such purpose "land may be taken and damages awarded as provided for laying out highways and other ways." This provision is broad, and must be regarded as applying to existing ways and railroads. The safety to be obtained and the mischief to be remedied, are as imperative as to existing as to future crossings; and it cannot be doubted that the legislature intended to provide for both. But from the important rights involved, and the granting of the right of eminent domain, it was deemed wise, after the adjudication by the railroad commissioners, to require the judgment of the presiding justice of the Supreme Judicial Court thereon, at a regular term, before it should become final. His judgment is subject to review by the law court.

The act of 1895 relates to crossing of one railroad by another, where no way is involved, and the crossing of a bridge owned by a municipality, over which any railroad may desire to pass. Under this act, the railroad commissioners are required to make a report in writing of their determination, file it in their office, and cause a copy to be sent by mail to each railroad corporation, or to the municipal officers of the city or town as the case may be. Their decision is final upon the parties, unless an appeal is taken to the Supreme Judicial Court. On appeal, the presiding justice is authorized "to make such order or decree thereon as law and justice may require;" and exceptions are allowed. It was not deemed necessary in the case of two railroads crossing each other, or of a railroad using a municipal bridge, to require the sanction of this court, before the decision of the commissioners should have force. It might well be assumed, that in many cases of the crossing of two railroads, or the use of a municipal bridge, the decision of the commissioners would be satisfactory to both parties, and no action of this court be required.

In the case at bar, we have a railroad crossing a highway, and being crossed by another railroad, a condition not specifically provided for by the statutes. It is urged that two proceedings should be had; one for a change of the highway to an overhead crossing of the Maine Central railroad, the damages to be

apportioned between that railroad and the town of Veazie, in which the way is,—under the act of 1889,—and another proceeding under the act of 1895, for the crossing of the Maine Central by the electric road upon the elevated highway to be constructed over it,—and that it is not competent for the commissioners to change the crossing at grade by the electric road, now existing, to the overhead crossing by the altered line of highway, except upon request of the electric road. But the electric road on June 19, 1895, by its petition to the railroad commissioners, asked a crossing of the Maine Central railroad at Veazie. The railroad commissioners granted a crossing at grade, " until otherwise ordered by the board." That crossing has been made, and has been and still is used by the electric road. An appeal from the commissioners' decision was taken by the electric road, and is still pending; but the reasons for the appeal to which the appellant is limited, raise no question as to the location of the crossing itself, but only object to the apportionment of the expense of its construction and the cost of the signal post and salary of the signal man. The location of the grade crossing is not appealed from, and remains established by the decision of the commissioners.

The change in the highway, when confirmed by this court, will operate a discontinuance of the highway across the Maine Central railroad, and vacate the right of the electric road in its present grade crossing. The electric road is legally located over that highway, and after the change made by the commissioners is accomplished, it remains the same highway; it is but a change from a grade to an overhead crossing; and the electric road does not need any new location or additional consent of Veazie to use it. If, as suggested, one proceeding is had for the change and alteration in the highway alone, and the Maine Central Railroad and the town of Veazie pay the entire expense, it may be that the electric road could run its cars over the bridge and overhead way, free of expense. It is doubtful if any provision of law exists, to compel it, under such circumstances, to pay its fair share of the expense, already borne by Veazie and the Maine Central. The suggestion of counsel, that a wooden bridge could be built,

sufficient for ordinary travel on the highway, but insufficient for electric cars, and that when the electric road asks to cross, it might be compelled to pay its share of the expense of a stronger structure, involves unnecessary delay and needless waste of money. A construction of the statutes which would lead to such results, ought. not to be adopted, unless imperatively demanded by their language.

To accomplish the desired object of an overhead crossing of the Maine Central Railroad, by the highway and the electric road thereon, and equitably to apportion the expense between the two railroads and the town of Veazie, the whole matter should be heard at one time and upon one petition, by the railroad commissioners. The statute of 1889 relates to the crossing of a railroad by a highway; and the act of 1895, to a crossing of one railroad by another. The mode of proceeding when a construction of the three crossings at one point is involved, is not prescribed by any statute; yet the subject matter falls within the jurisdiction of the railroad commissioners, by force of the two statutes. The proper proceeding, therefore, where the three crossings are involved, is to present them all in one petition, as was done here; and have one decision, adequate to protect the rights of all parties, and equitably apportion the burden.

The primal proposition was to change the highway crossing of the Maine Central road by the highway, from grade to overhead. To effect this, the conformation of the ground required the overhead crossing to be upon the elevation, contiguous to, but a few rods removed from, the existing crossing; and this change also involved the exercise of the right of eminent domain, to secure ingress and egress to and from the old line of highway, by the overhead way. The act of 1889 conferred upon the railroad commissioners authority to do this, subject to the approval of this court. The highway leading through Veazie is the same highway after, as before, the alteration. The electric road was legally located and exists upon that highway. It now has an established crossing of the Maine Central Railroad at grade over and along the highway. When the highway is raised to pass over the railroad,

the electric road must pass over and upon the highway as then existing; and it is immaterial whether this is at the precise point of the established grade crossing, or contiguous thereto. The place, mode and manner of crossing is within the jurisdiction of the railroad commissioners. The electric road now has a grade crossing, established upon its petition, accepted and used by it. It could not cross the railroad without permission of the railroad commissioners. That permission was granted "until otherwise ordered" by the board. The electric road accepted the privilege with this condition; and now when, as incident to the change of grade of the highway, the railroad commissioners require the electric road to conform to the change, it cannot be successfully answered by that railroad, that it may choose to go elsewhere, and avoid the crossing altogether. It has not done so, but holds and uses the existing crossing, and is litigating as to the apportionment of the expense attending it. If it would escape its share of the expense of the change of grade, it can do so by abandoning its location at the grade crossing, before decree upon the railroad commissioners report, and making a location that will avoid crossing the Maine Central. But the suggestion of possible action of this kind by the electric road, with no action taken, cannot be received as a defense.

The railroad commissioners made return of their decision to the Supreme Judicial Court, as provided by chap. 282, of the laws of 1889, amending section 27 of chap. 18 of R. S.; but did not file in their office, and send copies of their decision to the railroads interested, as provided by chap. 72, section 4, of laws of 1895. These provisions are directory, and do not constitute conditions precedent to the validity of the decision. *Veazie* v. *Mayo*, 45 Maine, 564. Both railroad companies and the town of Veazie must have had actual notice of the decision of the railroad commissioners, for they all appear here and are represented by able counsel.

The railroad commissioners properly made report to this court, in the manner provided by the law of 1889; the change in the highway being the principal thing, and the change of the electric

road being the resulting incident. There was no necessity to observe the formalities prescribed in the act of 1895, relating only to a crossing of one railroad by another. The rights of all parties will be amply protected by the decree which the presiding justice, at a term of the Supreme Judicial Court, shall make, subject to be reviewed by the law court, as provided in the act of 1889.

The act of 1889, authorizing the railroad commissioners to take land, necessary to ingress and egress to and from the overhead crossing, imposed upon them the duty of assessing the damages for land so taken. They omitted to do this. If, in their decision, they had made no mention of damages, it would be equivalent to a decision that no damages had been sustained; and the land owner, if dissatisfied, would have had his remedy as provided by law. *Detroit* v. *Co. Com.* 52 Maine, 215 ; *Howland* v. *Co. Com.* 49 Maine, 147. But the commissioners say in their report, after having located the approaches to the overhead crossing, that "the land described in the aforesaid change of location may be taken for the above named purposes, and damages awarded as provided by law." This language implies, that in the judgment of the railroad commissioners, some damages were sustained; and if so, they should have assessed them. The report must be recommitted to allow the commissioners to assess the damages.

No other objection is perceived, to the acceptance and confirmation of the report, so far as to establish the change of grade of the highway and of the electric road. By the terms of the report, "all questions of fact relative to the course and expense of the new highway, if ordered, the kind and maximum cost of the bridge and the abutments thereon, the apportionment of the expense of building and maintaining the same, and the taxation and allowance of the cost are to be finally determined by a single justice without right of exception to his determinations." When the railroad commissioners shall have assessed the damages for the land taken, and amended their report to include such assessment, and returned the same to court, the case will be in order for the hearing by a single justice upon the matters agreed to be submitted to him; and decree should go according to the report

of the commissioners as to the change of grade and location of the approaches to the overhead bridge, and the decision of the single justice as to the matters submitted to him.

*Report recommitted to have damages assessed for land taken.*